263 P.2d 392

**BUSTIN et al. v. CRAVEN et al.**

No. 5628.

Supreme Court of New Mexico.

Oct. 30, 1953.

Rehearing Denied Dec. 8, 1953.

Perry S. Key and Frank L. Horan, Albuquerque, for appellants.

Fred L. Nohl, Albuquerque, for appellees.

LUJAN, Justice.

C. T. Bustin and A. O. Smith, doing business as Bustin & Smith, in Austin, Texas, hereinafter referred to as plaintiffs, filed this action in the district court of Bernalillo County against Norman Craven and Paul Hunt, doing business as C & H Motor Company in Albuquerque, New Mexico, hereinafter referred to as defendants, as an action in replevin, wherein plaintiffs sought to recover possession of a 1950 Pontiac automobile and damages for its wrongful detention. The cause was tried to the court without a jury and a judgment rendered in favor of plaintiffs. Defendants appeal.

Plaintiffs allege that they are the owners and have the right to immediate possession of the car in question and that it is wrongfully detained from their possession by the defendants.

Defendants' answer recites that the plaintiffs are not the owners or entitled to the immediate, or any, possession of the automobile; that on January 2, 1952, plaintiffs gave possession of said automobile to Marvin T. Reed, alias Gerald A. Morrison; that on said date plaintiffs were not the owners of said car; that on said date Marvin T. Reed gave a check to the plaintiffs for the purchase of the said automobile; that plaintiffs may have acquired a Texas title to said automobile subsequent to January 2, 1952, but if they did they were not bona fide purchasers for value, without notice. It is further alleged that on February 13, 1952, said automobile was sold to the defendants for $1,350, by Marvin T. Reed, alias Gerald A. Morrison; that the title transferring said automobile to the defendants was an Illinois title; that the defendants are bona fide purchasers for value without notice and that the title of the defendants is superior to the entire world and especially the plaintiffs. It is also alleged that the plaintiffs are estopped from asserting any title to the car for the following reasons: (1) That the plaintiffs put it in the power of Marvin T. Reed, alias Gerald A. Morrison, to damage the defendants; (2) that the plaintiffs on the date they gave possession to Marvin T. Reed were not the owners of said automobile, but now claim an after-acquired title, with notice of infirmities and with knowledge of the rights of any bona fide purchaser for value without notice from Marvin T. Reed, alias Gerald A. Morrison; and (3) that on January 2, 1952, the plaintiffs gave possession of said automobile to Marvin T. Reed, alias Gerald A. Morrison and intended to sell same to Marvin T. Reed. That so far as the plaintiffs were concerned they did sell said automobile to Marvin T Reed, alias Gerald A. Morrison.

The negotiations between Marvin T. Reed alias Gerald A. Morrison and the plaintiffs were had in the state of Texas and subject to the laws of that state.

A. O. Smith, one of the plaintiffs, among other things, testified substantially as follows: That he and C. T. Bustin are used car dealers doing business in the city of Austin, Texas; that on January 3, 1952, Marvin T. Reed came to their place of business for the purpose of purchasing an automobile; that on said date he picked out the car in question and gave them a check on the Austin National Bank, Austin, Texas, in the sum of $1,821.80; that Reed took the car out for demonstration purposes to try it out and if satisfactory he was to come back the next day and consummate the deal and apply for his title; that it is a usual procedure to let prospective buyers take out cars to try them out; that when Reed took out the car he said he was going to sell some electronic equipment which he had and would be back the next day; that the Austin National Bank informed plaintiffs that Reed had no account with them; and that Reed never came back with the car.

The trial court made the following findings of fact:

"3. That on or about January 3, 1952, a man using the name of Marvin T. Reed entered into negotiations with the plaintiffs to purchase a certain 1950 Pontiac Four-door Sedan, the motor number of said automobile being K8TH–9334.

"4. That as a result of the negotiations plaintiffs delivered custody of the automobile to said Marvin T. Reed; that at that time Marvin T. Reed gave to plaintiffs a check in the amount of $1,821.00 after banking hours; that while this check was never present for payment it was determined the following day that the check was worthless in that Reed had no account in the bank upon which it was drawn.

"5. That it was understood by the plaintiffs and Reed that the car was delivered to Reed for demonstration purposes and that he would return the following day to apply for the certificate of title and possibly to arrange to finance part of the purchase price of the car.

"6. That Reed did not return the next day and in fact never returned to the place of business of the plaintiffs.

"7. That plaintiffs did not deliver to Reed any certificate of title, bill of sale, or other document indicating that plaintiffs had parted with title to the automobile.

"8. That Reed did not apply for a certificate of title in the State of Texas.

"9. That the wrongdoer, Reed, did not intend to purchase the car from the plaintiffs and intended at all times to perpetrate a fraud upon them."

Defendants seriously urge that the transaction between plaintiffs and Marvin T. Reed alias Gerald A. Morrison constituted a valid sale. With this contention we cannot agree.

■ There being no intention on the part of the purchaser (Marvin T. Reed alias Gerald A. Morrison) to pay for the automobile, the minds of the seller and the purchaser did not meet on the transaction, and the title to the car remained in the plaintiffs.

Article 1413, Vernon's Penal Code: The "Taking" Must Be Wrongful. Provides:

"The taking must be wrongful, so that if the property came into the possession of the person accused of theft by lawful means, the subsequent appropriation of it is not theft, but if the taking, though originally lawful, was obtained by any false pretext, or with any intent to deprive the owner of the value thereof, and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete."

In the case at bar the facts and circumstances are sufficient to warrant the conclusion that the fraudulent intent existed at the very time Marvin T. Reed alias Gerald A. Morrison obtained possession of the automobile, and that he used a false pretext to secure its possession. Riggs v. State, Tex.Civ.App., 125 Tex.Cr.R. 647, 70 S.W. 2d 164. The facts without contradiction whatever seem to us completely to establish the conclusion that Marvin T. Reed's conduct in dealing with plaintiffs constituted, in effect, theft by fraud. Measured in terms of stealth, deception, or general turpitude, his acts and conduct place him virtually in the same position, so far as Bustin & Smith, from whom he obtained the automobile, are concerned, as his position would have been had he stolen it.

In Texas Jurisprudence, Vol. 32, Section 19, page 660, the author says:

"It follows that for a check to have the effect of payment the drawer must have funds to his credit in the bank, and the bank must be in a position to pay the check on demand; hence the giving of a check upon a bank which confesses its inability to pay and refuses to pay, is not payment, * *."

And in 37 Texas Jurisprudence, Vol. 37, Section 210, page 470, it is said:

"* * * Thus it appears to be well settled that the seller does not lose his right in the goods by delivering them to the buyer upon receipt of a check that proves to be worthless upon due presentation; * * *."

In the case of Parma v. First National Bank of Cameron, Tex.Civ.App., 37 S.W.2d .274, 276, the court said:

"The general rule is that in cash sales of personal property, where a check is given for the purchase price, the sale is only conditional, and title does not pass to the purchaser unless and until the check is paid. * * *"

It follows from what has been said that, ·since the automobile was obtained from the plaintiffs by trickery and fraud there was no sale to Marvin T. Reed alias Gerald A. Morrison and he never acquired title thereto. McKinney v. Croan, 144 Tex. 9, 188 S.W.2d 144; Damis v. Barcia, 266 App. Div. 698, 40 N.Y.S.2d 107.

Vernon's Texas Penal Code, Certificate ·of Title Act, provides as follows: Article 1436–1, Section 33.

"No motor vehicle may be disposed of at subsequent sale unless the owner designated in the certificate of title shall transfer the certificate of title on form to be prescribed by the Department before a Notary Public, which form shall include, among such other matters as the Department may determine, an affidavit to the effect that the signer is the owner of the motor vehicle, and that there are no liens against such motor vehicle, except such as are shown on the certificate of title,

*and no title to any motor vehicle shall pass or vest until such transfer be so executed."* (Emphasis ours.)

Section 52 provides:

"It shall hereafter be unlawful to buy or acquire any title other than a lien in a motor vehicle registered or licensed in this State without then and there demanding of the proposed seller the registration receipt and certificate of title covering the particular motor vehicle which shall, *upon consummation of the purchase,* be transferred upon such form as may be provided by the Department." (Emphasis ours.)

And Section 53 provides:

"All sales made in violation of this Act shall be *void* and no title shall pass until the provisions of this Act have been complied with." (Emphasis ours.)

The Supreme Court of Texas has interpreted the above statutes in Erwin v. Southwestern Investment Co., 147 Tex. 260, 215 S.W.2d 330, 332, wherein the court said:

"It will be observed that these statutes expressly prohibit a sale of an automobile without the execution of a transfer before a notary public, and further expressly provide that all sales made in violation of the act shall be void and that no title shall pass until the provisions of the act have been

complied with. Under their express provisions Erwin could not have sold the automobile to Dunn so as to pass good title without executing and swearing to the transfer before a notary public (citing cases). On the face of the transfer, it appeared that the law had not been complied with."

In view of the Texas Act, and cases cited it was impossible to have consummated the attempted sale, and the entire transaction between the plaintiffs and Reed alias Morrison was void.

■ Defendants further contend that the plaintiffs, by placing Reed alias Morrison in possession of the car estopped themselves from claiming title and right of possession of the car against them, who parted with value in acquiring it from Reed alias Morrison. We are unable to agree with this contention. There is nothing in the testimony to indicate that the plaintiffs from whom Reed alias Morrison obtained the automobile, by means of a worthless check, clothed him with indicia of ownership whatever beyond mere naked possession of the car. They gave him no other evidence of ownership in the car.

■ Merely entrusting a third party with the possession of personal property does not constitute holding him out as owner so as to estop the real owner from claiming the same from one who purchases it from the possessor.

In 21 C.J., Estoppel, Section 181, page 1178, the rule is stated as follows:

"In order that the real owner of personal property may be estopped to assert his title against one who has dealt with the apparent owner on the faith of his apparent ownership of, or authority over, it, something more is required than mere possession on the part of the apparent owner, since merely entrusting a third person with possession does not constitute holding him out as owner. While possession may be prima facie evidence of ownership it is as consistent with other theories, that is, that the person in possession is a bailee or wrongdoer. The owner must go farther, and do, or omit to do, some act of a nature such as to mislead persons as to the true possession of the title * * *." See, also, 31 C.J.S., Estoppel, § 106.

If the true doctrine were otherwise than as stated above, no man could safely leave his watch with a watchmaker who sells watches, to be repaired, or no automobile owner could safely leave his car in a garage, where the business of selling cars is conducted, for the purpose of storing the same or having it repaired.

From one of plaintiff's (A. O. Smith) testimony it is clear that the only authority granted by him to Reed alias Morrison was to try out the car, and if satisfactory,

the deal would be consummated the next day. There is no showing that Reed alias Morrison was ever granted authority to make a sale of the automobile. The above authority is applicable.

The defendants next contend that they are bona fide purchasers for value without notice. In this connection the testimony is as follows: Mr. A. M. Mattimiller, Assistant Branch Manager, Southwestern Investment Company, testified:

" * * * The Court: Did you contact your Texas Company to check and report to see whether such car had been reported stolen in Texas or whether— what the state of the title in Texas was? A. No, Sir, because the title he presented to us seemed to be a good title to the best of our knowledge.

"The Court: To the best of your knowledge, and what you could find out, you made no investigation of title at all. * * * A. I beg your pardon. * * *

"The Court: Except look in this book and determine it was the same form of title? A. We called the local license distributor.

"The Court: He said that if you had a good Illinois title, he would transfer it? A. Yes, sir.

"The Court: You didn't tell him you had knowledge that this man Morrison owned the car? A. I am sorry. * * *

"The Court: This local license distributor didn't tell you he knew Morrison owned this Pontiac car and that he knew this title was good? A. No, sir.

"The Court: Did you make inquiry in Illinois concerning this title? A. No, sir.

"The Court: But you made no inquiry at all about Morrison or title of the car? A. That is correct.

*     *     *     *     *     *

"Q. Mr. Mattimiller, you testified Mr. Morrison told you the title which he presented to you was a new form under a recent law passed by the State of Illinois? A. Only as to the transfer on the back.

"Q. Only as to that? What part of the year 1952 did you talk with Mr. Morrison about that. A. I believe around February 13th, 14th somewhere along in there.

"Q. When did you acquire this book? A. I don't recall exactly but it was around the 1st of the year, 1952.

"Q. Look at the front of this book and state when it was copyrighted. A. In 1952.

"Q. So assuming you relied on this book; the book is current as of the

date you took this purported piece of paper, Illinois title, is that correct? A. I assume it was.

"Q. The back of the sheet of paper which you received from Morrison in no way conforms to the actual form as shown in your book, does it? A. That is true. That was our question on the title.

"Q. Would you read the statement on the fact of this title—would you read it to the court please?

\*    \*    \*    \*    \*    \*

"A. Are you speaking of the face of the title?

"Q. I am speaking about the back of the title. A. No, the back of the title didn't, that is true. Didn't conform to the back of that title.

\*    \*    \*    \*    \*    \*

"Q. Did you ever inquire of the State of Illinois as to the validity of that title? A. No, I didn't.

\*    \*    \*    \*    \*    \*

"The Court: Did you make any check as to what Morrison's occupation was, where he had lived or where he was going? A. No, sir.

\*    \*    \*    \*    \*    \*

"Mr. Key: Mr. Miller, I believe your testimony was that you didn't call Illinois, is that correct. A. That is correct."

Paul Hunt, one of the defendants, testified:

"\* \* \* Q. When this occurred —when did you find out he didn't bring this car back on the 14th.

\*    \*    \*    \*    \*    \*

"A. That was on the 14th. He was supposed to come in at approximately one o'clock and he didn't show up.

"Q. So what happened then? A. So then Mr. Craven went down to Southwestern Investment Company and they called Illinois, so I understand; several long distance telephone calls and found out this car wasn't registered there.

"Q. In Illinois? A. Yes, sir.

"Q. Then, what did your Firm do? A. Mr. Craven reported back to the lot and we immediately went to— started to look the car over and we happened to notice in the back of it some firm name of Austin, Texas. I can't remember off hand, Jack something. Mr. Craven went down and called the Texas Rangers and asked the Texas Rangers if they could inform him of the car in question and I can't remember exactly what they said. I think they said it was stolen or something to that effect and then they called Bustin & Smith. Bustin and Smith called.

\*    \*    \*    \*    \*    \*

"The Court: In other words, there was a little metal plate showing the name of the car dealer in Austin, Texas? A. Yes, sir.

\*   \*   \*   \*   \*   \*

"The Court: The first time you missed Morrison you went down to Southwestern Investment Company and made two telephone calls? A. Made several, your Honor, I don't know exactly how many.

"The Court: But in the course of a few hours you found out it was a stolen car and found out who the true owner of the car was. A. Called the Texas Rangers because of this sign on the back—Austin and something else.

"The Court: If you had made the calls the day before you would have been thirteen hundred dollars ahead? A. (No answer.)

"Q. Did you check to see if he was still in Town? A. Yes, sir.

"Q. And what happened, was he gone? A. Yes, sir."

■■ The only evidence of Reed's alias Morrison's ownership was his possession of the automobile and a forged and fraudulent Illinois certificate of title. The burden of proof was upon the defendants to show that they were bona fide purchasers for value without notice. This they utterly failed to do. The facts above set out were clearly of a character, considering the nature of the transaction, to put defendants upon inquiry regarding the vendor's title, who was a total stranger to them. If they had called the officials in the state of Illinois on the day Reed alias Morrison offered the car for sale instead of waiting until the next day to do so they would have discovered that the certificate of title from the State of Illinois presented to them was a forgery. They could have ascertained the true ownership of the automobile at the time it was paid for if they had exercised reasonable diligence. They did not make such investigation or any investigation in this case. They relied solely on what Reed alias Morrison told them and upon the forged certificate of sale.

■■ The defendants also contend that since the assignment of the certificate of title signed by John L. Allen, the prior owner of the car, was not notarized on the day it was delivered to plaintiffs, together with the car, that its execution was not in compliance with the provisions of the Texas Act and therefore void. We agree with this contention. However, in the instant case the plaintiffs were in rightful possession of the car under authority from John L. Allen at the time Reed alias Morrison obtained its possession by trickery and fraud. Thus, plaintiffs being rightfully in possession thereof they had an absolute right to maintain the present ac-

tion. In McKinney v. Croan, 144 Tex. 9, 188 S.W.2d 144, 146, the court said:

"It appears to be a settled rule that a purchaser of property from one who has acquired possession thereof by theft, acquires no title thereto. (Citing cases.)

"Defendants apparently concede the soundness of this general rule, but contend, among other things, that since the assignment of the certificate of title signed by Odom did not contain the name of the purchaser, it was not made in compliance with the provisions of Section 33 of the Certificate of Title Act, and consequently the sale was void under the provisions of Section 53 of the same Act, and Croan acquired no title to the vehicle. It is unnecessary for us to determine whether Croan obtained good title under the assignment from Odom, because it appears without dispute that Croan was in rightful possession of the vehicle under authority from Odom at the time Linney stole it; and it is well settled that one in rightful possession of personal property may maintain an action for its recovery against a thief or one holding under him. (Citing cases.)"

It is to be noted that at the date this suit was instituted the plaintiffs had perfected their title as required by the Texas laws.

Other points are presented and argued but we consider them without merit and therefore will not discuss them.

We are of opinion and so hold that at the time Reed alias Morrison attempted to transfer title to the automobile to the defendants, he had no title, hence the defendants received none, and that the plaintiffs were not guilty of any acts in the premises which would estop them from claiming title as against the defendants:

Finding no reversible error, the judgment is affirmed.

It is so ordered.

SADLER, C. J., and McGHEE, COMPTON, and SEYMOUR, JJ., concur.