423 P.2d 414

**P. G. ADAMS, Plaintiff-Appellant,**

**v.**

**Charles HEISEN and Dick Santillanes, Defendants-Appellees.**

**No. 7964.**

Supreme Court of New Mexico.

Jan. 30, 1967.

Chavez & Cowper, Belen, for appellant.

Charles H. Fowler, Socorro, for appellees.

OPINION

SPIESS, Judge, Court of Appeals.

This appeal is from a judgment in a replevin action wherein the trial court found that plaintiff (appellant), P. G. Adams was not entitled to the possession of 5,719 cubic yards of processed gravel which had been delivered to him under the writ of replevin and awarded damages to defendants (appellees), Charles Heisen and Dick Santillanes against the plaintiff for wrongful replevin.

The facts out of which this dispute arose may be stated as follows:

Santillanes was the owner of a tract of land in Socorro County which contained a deposit of sand and gravel and upon which a gravel pit had been established.

During the month of January 1963 appellee, Heisen, then an employee or agent of a firm operating under the name of C. B. Johnson Gravel Products Company, obtained permission from Santillanes for the firm to utilize the pit, remove and process gravel from the land subject to the payment to Santillanes of a royalty of 10 cents per cubic yard for material produced. The

Johnson firm did not enter upon the premises nor remove or process material under the agreement obtained by Heisen.

About February 3rd, 1963, Heisen terminated his relationship with the Johnson firm and negotiated a contract with Santillanes under which Heisen individually acquired the exclusive right to utilize the pit and produce or process material for a stated sum paid, together with a royalty to be paid as material was removed.

After the agreement between Heisen and Santillanes had been made, one Glen Adams, an employee of appellant P. G. Adams, negotiated with Santillanes to secure permission for P. G. Adams to use the gravel pit, remove and process the material. During such negotiations Santillanes informed Glen Adams that Heisen had the exclusive right to work the pit and take the material. Glen Adams then informed Santillanes that Heisen was no longer associated with the Johnson firm.

Santillanes upon being so informed told Glen Adams to confer with his (Santillanes') lawyer and that any agreement made by the lawyer would be approved by him. Neither Glen Adams nor his principal, P. G. Adams, ever conferred with Santillanes' lawyer regarding the matter. Glen Adams discussed the use of the pit and removal of material from the Santillanes land with Heisen who authorized the use of the pit and removal of material by or for P. G. Adams, but only upon the condition that Adams would not permit a certain piece of equipment then in possession of the Johnson firm to be used at the pit or in the production of the material. Adams agreed to the condition and in early March the Johnson firm commenced the production of material from the pit for P. G. Adams.

The condition imposed by Heisen was promptly violated in that the particular piece of equipment which was not to be used was taken to the pit and placed in use. Heisen immediately informed Glen Adams that the right to remove material from the land and the use of the pit was withdrawn and terminated. The Johnson firm nevertheless continued to operate at the pit and process material for P. G. Adams until the middle of April, 1963, when they removed their equipment. P. G. Adams paid the Johnson firm for all material it had processed including that which remained at the pit after the firm had ceased operating. During the period the pit was operated for Adams, Santillanes believed that permission for its use and the right to remove materials had been granted by Heisen, and Heisen in turn was under the belief that Santillanes had authorized Adams to operate the pit.

From time to time while the pit was being worked for his benefit, Adams paid Santillanes royalty at the rate of 10 cents per cubic yard. After termination of work by the Johnson firm approximately $1,400.00 was owing by Adams to Santillanes for which demand was made upon Adams.

Adams having failed to make the final payment, Santillanes, believing that Heisen was personally responsible to him, made demand upon Heisen. At this time it was first learned by both Heisen and Santillanes that neither had authorized or permitted the working of the pit by or for Adams after withdrawal of such permission by Heisen. Both Santillanes and Heisen then locked the gate to the pit and denied Adams the right to enter the premises or to remove the 5719 cubic yards of material which had been processed and stockpiled at the pit by the Johnson firm for Adams. As we have stated, Adams obtained possession of the material through a writ of replevin issued in this cause.

After hearing the trial court determined that plaintiff, Adams, had continued in possession of the property, worked the pit, processed and removed material without permission from either Santillanes or Heisen, and that Adams' acts constituted a trespass. The court further concluded that Adams, through his wrongful acts, acquired no interest in or right to possession of the materials. The measure of damages employed by the trial court in determining the amount of the judgment against plaintiff Adams was the retail value of the processed material.

Four points are relied upon by Adams for reversal. First, it is contended that Heisen was a licensee and as such had no interest in nor right of possession to the products of the gravel pit until he severed the products from the realty.

As to the stockpiled material, the subject of this action, it appears to be Adams' position that Heisen had neither title nor right to possession. Appellant likewise questions the legal sufficiency of the instrument under which Heisen acquired his interest. The difficulty with this contention is that in replevin plaintiff must recover, if at all, on the strength of his own title or right to possession. Bustin v. Craven, 57 N.M. 724, 263 P.2d 392 (1953); Brennan v. W. A. Wills, Ltd., (10th Cir. 1959), 263 F.2d 1; Herl v. State Bank of Parsons, 195 Kan. 35, 403 P.2d 110, (1965); Southside Atlantic Bank v. Lewis, 174 So. 2d 470, Fla.App. (1965); Bordman Investment Co. v. Field, 182 Kan. 344, 320 P.2d 862 (1958).

The trial court specifically found that plaintiff was a trespasser who acquired no lawful interest in nor right of possession to the materials taken and processed through his trespass. This finding is not attacked and is binding on this court. Dowaliby v. Fleming, 69 N.M. 60, 364 P.2d 126 (1961); Arias v. Springer, 42 N.M. 350, 357, 78 P.2d 153 (1938); Scott v. Homestake-Sapin, 72 N.M. 268, 269, 383 P.2d 239 (1963). Having no title or right of possession in himself Adams cannot prevail on any claim of weakness in his adversary's title.

Caledonian Coal Company v. Rocky Cliff Mining Company, 16 N.M. 517, 120 P. 715

(1911), is cited and relied upon by Adams. This case involved the interest of Caledonian in coal which had been mined by Rocky Cliff upon lands claimed by Caledonian and thereafter disposed of by Rocky Cliff. The action was in trespass and brought by Caledonian against Rocky Cliff for recovery of the value of the coal mined and removed by Rocky Cliff. It appears from the opinion, which, however, was modified after motion for rehearing, that Caledonian was not the owner of the land involved but had only a purchase agreement and license to mine coal from the owner. As a result it was determined that Caledonian had no title to the coal until mined by it and was not entitled to recover the value of the coal removed from the land by Rocky Cliff. Reasoning from this case Adams says that Heisen having only a license to remove gravel had no title to the gravel until he had removed it and was consequently not entitled to a recovery.

■ The court in Caledonian also held that the right of action was in the owner of the land. The Caledonian case is distinguishable from the present case upon two grounds. First, the action was in trespass and Caledonian, as plaintiff, had the burden of establishing its ownership and title. Whereas, here Adams had the burden of establishing his title and right to possession of the material, and as we have stated he could not prevail upon the weakness of Heisen's title. Second, Santillanes, the owner of the land involved, was a party to this action and the judgment ran in favor of both Santillanes and Heisen.

Plaintiff next claims that he was licensee of Santillanes by both implication and estoppel and entitled to remove materials which he produced.

■ The essential element in the creation of a license is the permission or consent of the licensor. Conaway v. Time Oil Co., 34 Wash.2d 884, 210 P.2d 1012, 1017 (1949); Gravelly Ford Canal Co. v. Pope & Talbot Land Co., 36 Cal.App. 717, 178 P. 155 (1918); Chain Belt Co. v. United States, 115 F.Supp. 701, 709, 127 Ct.Cl. 38 (1953). It follows that a license by implication cannot be based upon mistake. Schraeder Mining & Manufacturing Co. v. Packer, 129 U. S. 688, 689, 699, 9 S.Ct. 385, 32 L.Ed. 760 (1889); Allen v. Lewis, 26 Wyo. 85, 177 P. 433, 443 (1919); Fraser v. City of Portland, 81 Or. 92, 158 P. 514, 9 A.L.R. 614 (1916). The court found as a fact that Heisen and Santillanes locked the gate to the premises as soon as they learned of their mutual mistake of the facts under which the pit was being operated. This action cannot thus become the basis for an implied license or license by estoppel.

■ Appellant's third point further challenges the right of either Santillanes or Heisen to the possession of the property which is the subject of the replevin action, the theory being that neither of them had a

possessory lien upon or against the processed material. Here again appellant encounters the rule that his right of recovery is dependent upon the strength of his own title or right to possession and not the weakness of that of an adversary. The authorities cited by us in considering appellant's first point are applicable here. Consequently, in our opinion, there is no merit to the third point.

■ Finally, plaintiff contends that the retail value of the processed material, except as to some 350 yards not at issue here, was not the proper measure of damage because this allowed Heisen to reap the benefits of production and processing without credit to Adams therefor.

In Alvarado Mining and Milling Company v. Warnock, 25 N.M. 694, 187 P. 542 (1920), which involved the removal of copper ore by a trespasser, we held that where a trespass is willful and intentional the measure of damages was the net value of the ore taken from the premises and the trespasser was not entitled to deduct therefrom the expenses of mining, milling, freight and smelter charges. A like rule is applicable to gravel and no allowance is made to the wrongdoer for his labor and expense and he must pay the market value of the gravel in its enhanced condition. Cage Bros. v. Whiteman, 139 Tex. 522, 163 S.W.2d 638 (1942); Arkansas Power and Light Company v. Decker, 179 Ark. 592, 17 S.W.2d 293 (1929); Pettigrew v. W. & H. Development Company (1960 Fla.App.), 122 So.2d 813 (1960). See also cases collected 1 A.L.R.3rd, 803 & 811.

It is implicit in the trial court's finding of fact that the trespass was willful in that the removal of the material was found to have been accomplished by Adams with full knowledge that he had neither Santillanes' nor Heisen's permission to enter on the premises or to obtain material from the pit. See: Gray v. Alabama Fuel & Iron Co., 216 Ala. 416, 113 So. 35 (1926); Warren Stave Co. v. Hardy, 130 Ark. 547, 198 S.W. 99, 100, L.R.A.1918B, 183 (1917); Petrelli v. West Virginia-Pittsburgh Coal Co., 86 W. Va. 607, 104 S.E. 103 (1920); Resurrection Gold Min. Co. v. Fortune Gold Min. Co., 129 F. 668, 679, 65 C.C.A. 180 (1904); Elk Garden Big Vein Mining Co. v. Gerstell, 100 W.Va. 472, 131 S.E. 152, 153 (1926); Lebow v. Cameron, Ky., 394 S.W.2d 773 (1965); Autry v. Adams, 95 Ga.App. 207, 97 S.E.2d 585 (1957); Tennessee A. & G. Ry. Co. v. Zugar, 193 Ga. 386, 18 S.E.2d 758 (1942).

In view of the trial court's findings we are of the opinion that the correct measure of damages was employed in determining the amount of the award.

Finding no error, judgment is affirmed.

It is so ordered.

MOISE and COMPTON, JJ., concur.