F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**SEP 17 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

JOHN S. WILLIAMSON and
NANCY L. WILLIAMSON,

      Plaintiffs-Appellants,

v.

BERNALILLO COUNTY SHERIFF'S
DEPARTMENT; BERNALILLO
COUNTY; DUGGER'S TOWING; and
R. JONES, in his capacity as a Deputy
Sheriff of Bernalillo County, and
Individually,

      Defendants-Appellees.

No. 97-2038
(D.C. No. CIV-95-1394-JP)
(D. N.M.)

---

ORDER AND JUDGMENT[*]

---

Before ANDERSON, BARRETT, and MURPHY, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiffs brought this action to redress alleged constitutional and state law violations arising out of the impoundment of a truck by the Bernalillo County Sheriff's Department. They now appeal from an order dismissing the county and the sheriff's department as improper parties, granting summary judgment on the constitutional claims asserted under 42 U.S.C. § 1983, and dismissing the lone state claim pursuant to 28 U.S.C. § 1673(c). We affirm.

On October 21, 1995, two Bernalillo County sheriff's deputies stopped a truck in which plaintiffs John and Nancy Williamson were driver and passenger. Mr. Williamson was unable to produce a driver's license, registration, certificate of insurance, or proof of ownership.[1] License and registration checks revealed both were expired. The deputies cited Mr. Williamson for several violations and impounded the truck. Thereafter, the wrecker refused to release the truck unless plaintiffs paid towing and storage charges. Ultimately, Mr. Williamson was found guilty of operating a vehicle without liability insurance, failing to exhibit a valid driver's license, and failing to exhibit a valid registration. Nevertheless, the truck was eventually released, without condition, to plaintiffs.

---

[1]    Although--perhaps because--plaintiffs' lawful possession of the truck has not been in dispute, the identity of the truck's owner is not clearly shown in the record.

-2-

In the meantime, plaintiffs commenced this action, alleging that defendants had seized the truck without authorization, in violation of the Fourth Amendment, and withheld it without requisite procedural protections, in violation of the Due Process Clause of the Fourteenth Amendment. The district court rejected these federal claims, holding that plaintiffs, particularly Mrs. Williamson, lacked standing to assert them and/or that defendants had satisfied the controlling constitutional standards. The court also noted that the county and sheriff's office were not entities subject to suit. Finally, with the federal claims gone, the court declined to exercise supplemental jurisdiction over plaintiffs' state replevin claim against the wrecker.

## I

Before reaching the constitutionality of the impoundment, we address two broad, preliminary contentions advanced by defendants. First, they argue that our analysis of the impoundment must proceed exclusively under the reasonableness standard of the Fourth Amendment, which they assert predominates whenever the government seizes private property. However, the Supreme Court has repeatedly rejected such attempts to attribute primary, preemptive status to one of multiple independent constitutional guarantees. See, e.g., United States v. James Daniel Good Real Property, 510 U.S. 43, 49-50 (1993); Soldal v. Cook County, 506 U.S. 56, 70-71 (1992) (distinguishing Graham v. Connor, 490 U.S. 386 (1989), which

assessed excessive force claim under standard of Fourth Amendment instead of substantive due process because latter was not distinct constitutional command, but only alternate, less specific source for same proscription).  Here, the Fourth Amendment determines whether the sheriff's deputies were substantively authorized to seize plaintiffs' truck, while the Due Process Clause independently prescribes plaintiffs' attendant procedural rights.[2]

Second, defendants contend plaintiffs lack standing to invoke either Fourth Amendment or due process guarantees because they did not prove ownership of the truck.  However, possessory interests are protected by both the Fourth Amendment, see Soldal, 506 U.S. at 61; see, e.g., Winters v. Board of County Comm'rs, 4 F.3d 848, 853 (10th Cir. 1993), and the Due Process Clause, see Fuentes v. Shevin, 407 U.S. 67, 86 (1972); see, e.g., Wolfenbarger v. Williams, 774 F.2d 358, 362 (10th Cir. 1985).[3]  Indeed, when the claimed injury involves loss of use--here, over five months without a vehicle allegedly necessary to a

---

[2]    This is not to deny that, depending on the context, adherence to Fourth Amendment requirements may incidentally satisfy due process concerns as well, particularly those relating to predeprivation procedural protections.  See Sanders v. City of San Diego, 93 F.3d 1423, 1428 (9th Cir. 1996).

[3]    We note that New Mexico property law, like its Oklahoma counterpart considered in Wolfenbarger, 774 F.2d at 361, recognizes and protects possessory interests, through, for example, causes of action for conversion, see Aragon v. General Elec. Credit Corp., 557 P.2d 572, 574 (N.M. Ct. App. 1976), and replevin, see Adams v. Heisen, 423 P.2d 414, 416 (N.M. 1967).

business requiring transportation of heavy equipment--rather than loss of title, possession is in a practical sense the truly burdened interest.

Further, defendants' contention that Mrs. Williamson has special standing problems because she was just a passenger, misconceives the operative interest here. The passenger/driver distinction may be significant for privacy expectations, as the search cases relied on by defendants indicate, but the *seizure* claim pursued here turns on property, not privacy, interests:

> [T]he Fourth Amendment protects two types of expectations, one involving "searches," the other "seizures." A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A "seizure" of property occurs where there is some meaningful interference with an individual's possessory interests in that property.

Soldal, 506 U.S. at 63 (quotation omitted) (rejecting Seventh Circuit's view that possessory interest in seized property is unprotected by Fourth Amendment where privacy or liberty interest is not also at stake). Since Soldal clarified this point, circuits have recognized that the lack of a privacy interest sufficient to challenge a search does not undermine standing with respect to the seizure of property in which one has a possessory interest. See, e.g., Lenz v. Winburn, 51 F.3d 1540, 1550 n.10 (11th Cir. 1995); Bonds v. Cox, 20 F.3d 697, 701-02 (6th Cir. 1994).

We note in this regard that Mrs. Williamson's property interest in the truck is, on our record, apparently no less significant than her husband's.[4]

## II

We turn, then, to the viability of plaintiffs' constitutional claims on summary judgment. On de novo consideration thereof, see Wolf v. Prudential Ins. Co., 50 F.3d 793, 796 (10th Cir. 1995), we affirm summary judgment in favor of defendants for the reasons that follow.

### A

The framework for our Fourth Amendment analysis was set out in United States v. Ibarra, 955 F.2d 1405 (10th Cir. 1992). There we identified two sources of authority for the warrantless removal of stopped, parked, or abandoned vehicles: specific state (or local) motor vehicle laws, and the general interest in public safety recognized in South Dakota v. Opperman, 428 U.S. 364, 369 (1976) ("The [inherent] authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond

---

[4]    Even if possession of the truck were attributable only to Mr. Williamson as driver, defendants have never suggested that his interest would have been exempt from Mrs. Williamson's community property rights. See generally Ruggles v. Ruggles, 860 P.2d 182, 192 (N.M. 1993) ("[I]t is axiomatic that each spouse in a marriage has a present, vested, one-half interest in the spouses' community property."); Hodges v. Hodges, 678 P.2d 695, 697 (N.M. 1984) ("Property acquired during marriage by either husband or wife is presumed to be community property.").

question") (plurality opinion). See Ibarra, 955 F.2d at 1408-10. Put simply, if one of these sources applies, impoundment is reasonable, see, e.g., United States v. Rios, 88 F.3d 867, 869-72 (10th Cir. 1996); if neither does, it is not, see, e.g., Ibarra, 955 F.2d at 1410.

On the present record, we cannot say with any confidence that a particular statute or ordinance specifically authorized the impoundment of plaintiffs' truck. However, given that it was concededly left on a highway "only two lanes wide, with no shoulder," R. I. doc. 6, at 3 (First Amended Complaint), and thus "caused [a] traffic impediment by [blocking] the middle of a road which had no place to pull off of,"[5] Opening Br. for Appellant at 17 n.5, impoundment was justified, as a matter of law, in the interest of safety under Opperman. Cf. United States v. Griffin, 729 F.2d 475, 480 (7th Cir. 1984) (where occupants could not lawfully drive vehicle off emergency lane of highway, impoundment was prudent exercise of community caretaking function and therefore proper under Opperman).

---

[5] Lacking registration and liability insurance, plaintiffs could not lawfully have driven the truck away from the scene. See N.M. Stat. Ann. § 66-3-19(E); § 66-5-205(A), (B). Their objection that the deputies who stopped them for improper registration were responsible for the disadvantageous location of the truck is spurious. Those found violating traffic laws on a particular highway are in no position to complain about the inconvenience of being stopped thereon.

## B

Circuit precedent also provides ample guidance regarding the dictates of due process in the present context.

> [Our] cases make it clear that vehicle impoundment and the imposition of attendant penalty charges prior to any hearing may be appropriate provided the aggrieved party is afforded adequate notice of a post-deprivation hearing in which the validity of the impoundment can be disputed, either directly or by way of a challenge to the underlying violation, and, if successful, the party may recover any fees or penalties assessed.

Summers v. Utah, 927 F.2d 1165, 1169 (10th Cir. 1991).  Plaintiffs do not dispute the availability of a timely post-deprivation hearing, but argue that the hearing was inadequate for two reasons.

First, plaintiffs complain that the hearing, conducted by a municipal traffic court, concerned only the traffic violations and, thus, was not an opportunity to challenge the impoundment of the truck.  However, as Summers makes clear, a hearing to defend against the underlying violations is sufficient, provided the validity of the impoundment is thereby, at least indirectly, put in issue.  Given the interdependence between the violations here--which, if (and only if) valid, rendered the truck undrivable--and the resultant need for impoundment, the hearing on the violations plainly satisfied the indirect-challenge component of Summers' due process test.

The real thrust of plaintiffs' position is in their related objection that, however undercut theoretically the impoundment would have been by a successful defense against the underlying citations, they could have obtained no *relief* regarding the impoundment from the traffic court. Defendants, who have ignored this remedial component of the Summers test, do not dispute the asserted limitations of the traffic court proceeding in this regard. We therefore assume, for the sake of argument, that the premise of plaintiffs' objection is correct. Nevertheless, we hold that the potential procedural deficiency they identify was necessarily inoperative in their case and therefore cannot establish a cause of action here.

Plaintiffs do not challenge, nor do we have reason to doubt, the procedural sufficiency of the hearing on the merits of the traffic violations. As this aspect of the proceeding concluded with a substantive determination adverse to plaintiffs, the question of relief vis a vis the impoundment never came into play. In short, whatever latent remedial deficiencies might potentially inhere in the process, it was constitutional as applied to plaintiffs because it properly terminated before any question of remedy could have been material to them.[6]

---

[6]    Of course, a party actually denied due process has a claim for nominal damages regardless of the substantive merit of the underlying dispute. See Zinermon v. Burch, 494 U.S. 113, 126 n.11 (1990). Thus, such a violation is not excused by showing, after the fact, that the party would not have prevailed in any

(continued...)

-9-

**III**

Our holding that the federal claims asserted herein were properly resolved on summary judgment deflates plaintiffs' remaining appellate contentions. In the absence of an anchoring federal cause of action, the district court properly exercised its discretion in dismissing plaintiffs' supplemental replevin claim. See 28 U.S.C. § 1367(c); see, e.g., Doe v. Bagan, 41 F.3d 571, 577 (10th Cir. 1994). As that leaves no causes of action remaining in the case, plaintiffs' objection to the dismissal of the county and the sheriff department as improper parties is moot.

The judgment of the United States District Court for the District of New Mexico is AFFIRMED. The mandate shall issue forthwith.

Entered for the Court

James E. Barrett
Senior Circuit Judge

---

[6](...continued)
event. Here, in contrast, our point is that plaintiffs received due process on the merits and simply failed, in the course thereof, to establish any entitlement to the contingent remedial process they assert would have been inadequate.