UNITED STATES of America,
Plaintiff–Appellant,

v.

Alejandro Garcia IBARRA,
Defendant–Appellee.

No. 90–8018.

United States Court of Appeals,
Tenth Circuit.

Feb. 5, 1992.

Richard A. Stacy, U.S. Atty., and Lisa E. Leschuck, Asst. U.S. Atty., D. Wyo., Cheyenne Wyo., on the briefs for plaintiff-appellant.

Stephen M. Kissinger, Cheyenne, Wyo., on the briefs for defendant-appellee.

Before McKAY, Chief Judge, BALDOCK, Circuit Judge, and KANE,[1] District Judge.

McKAY, Chief Judge.

On March 24, 1989, defendant was arrested and charged with possession with intent to distribute cocaine under 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii) (1988). On November 15, 1989, the United States District Court for the District of Wyoming ordered suppressed certain evidence critical to the government's case against defendant. *United States v. Ibarra,* 725 F.Supp. 1195 (D.Wyo.1989). The government subsequently filed a motion for reconsideration, which the district court rejected on January 3, 1990. *United States v. Ibarra,* 731 F.Supp. 1037 (D.Wyo.1990). The government then appealed the suppression order to this court. We rejected the government's appeal, holding that the thirty-day period in which to timely file an appeal began running on the date of the district court's original order rather than on the date the district court denied the government's motion for reconsideration. *United States v. Ibarra,* 920 F.2d 702 (10th Cir. 1990), *vacated,* —— U.S. ——, 112 S.Ct. 4, 116 L.Ed.2d 1 (1991). Because more than thirty days had elapsed between the filing of the original order and the government's appeal, we dismissed the appeal. *Id.* The government appealed that dismissal to the United States Supreme Court, which vacated our decision. *United States v. Ibarra,* —— U.S. ——, 112 S.Ct. 4, 116 L.Ed.2d 1 (1991). We therefore now proceed to consider the merits of the government's earlier appeal to this court.

## I.

On March 24, 1989, defendant and a companion were travelling east on Interstate 80 through Wyoming at a lawful rate of speed in a white 1981 Oldsmobile Cutlass with California license plates. During this time, Wyoming Highway Patrolman Scott Mahaffey observed that defendant appeared to be driving at a slower speed than other traffic and weaving within his marked lane. Suspecting that defendant may have been intoxicated, Officer Mahaffey followed the vehicle for approximately five miles. While following the vehicle, Officer Mahaffey saw it pass two other vehicles without signaling. Officer Mahaffey also observed defendant's vehicle cut in front of another vehicle. After noticing further intermittent weaving, Officer Mahaffey then stopped the vehicle to determine whether the defendant was intoxicated.

Officer Mahaffey approached the driver's side of the vehicle and asked defendant for his driver's license, which defendant promptly produced. When Officer Mahaffey informed defendant that he had stopped him for failing to signal prior to making lane changes, defendant responded

---

1. Honorable John L. Kane, Jr., Senior United States District Judge for the District of Colorado, sitting by designation.

that he thought he had signaled, but perhaps he had not. Although Officer Mahaffey stated that he had stopped defendant for suspicion of driving under the influence of alcohol, he failed to pursue an investigation of this possible offense other than by conducting a cursory examination of defendant's appearance and behavior.

Officer Mahaffey then returned to his patrol car to issue a warning ticket to defendant and to run a check on defendant's driver's license. This check revealed that defendant's license had expired. Using his loudspeaker, Officer Mahaffey requested that defendant bring his vehicle registration to the patrol car. When defendant complied, Officer Mahaffey told defendant about the expired license and wrote a citation which required defendant to post a $220 appearance bond in order to avoid immediate arrest. Defendant returned to his vehicle and produced the required bond money.

After receiving the money for the bond, Officer Mahaffey told defendant that the ownership of the vehicle was in doubt because the registration and ownership certificate bore the name of Charles J. Petrocchi. Defendant explained that he had recently purchased the vehicle from Mr. Petrocchi. Officer Mahaffey then asked his dispatcher to try to contact Mr. Petrocchi to determine whether the vehicle in fact belonged to defendant. Meanwhile, a second Wyoming highway patrol officer arrived at the scene and sat in the back seat of Officer Mahaffey's patrol car.

Defendant then told Officer Mahaffey that he had only $40 remaining with which to travel to Chicago. Officer Mahaffey asked defendant the reason for his travel to Chicago. Defendant responded that he intended to visit some friends there. He later changed his story, however, by stating that he actually was moving to Chicago. Because Officer Mahaffey had seen only a few possessions in defendant's vehicle, he became suspicious of defendant's story. He asked defendant whether the vehicle contained any weapons, large amounts of money, or any controlled substances. Defendant answered "no." Officer Mahaffey then asked whether he could look at the contents of the vehicle. Defendant consented. The officers and defendant got out of the patrol car and approached defendant's vehicle. Officer Mahaffey asked if he could look in the trunk. Without verbally responding, defendant opened the trunk. The trunk contained several nylon bags. Without asking whether he could search the bags, Officer Mahaffey opened them but discovered nothing unusual. Officer Mahaffey then searched the passenger compartment while the other officer, Greg Leazenby, continued to search the trunk. The search of the vehicle revealed nothing unusual or illegal. Defendant then shut his trunk.

Officer Mahaffey then informed the passenger in the vehicle that because defendant could not drive without a valid license, she would need to drive the car provided she could produce a valid license. Her license, however, turned out also to be expired. Then, without consulting defendant, Officer Mahaffey contacted a private wrecker to tow defendant's vehicle to Laramie, Wyoming, which was a short distance away. Officer Mahaffey told defendant that his vehicle would be released when defendant could produce a licensed driver to operate the vehicle.

The officers then drove defendant and his passenger to a Western Union station where they could wire for extra money and find a licensed driver. During this trip, Officer Mahaffey spoke with the wife of Mr. Petrocchi, who informed him that Mr. Petrocchi had in fact sold the vehicle to defendant several weeks earlier. Officer Mahaffey also learned at that time that defendant had no liability insurance for the vehicle.

After dropping off defendant and his passenger at the Western Union station, the officers went to Warren's towing, which had towed defendant's vehicle. There they renewed their search of the vehicle. The officers believed that they had defendant's continuing consent to search the vehicle despite their failure to ask defendant whether that in fact was the case. During the search, the officers re-

moved the nylon bags from the trunk and lined them up on the ground next to the vehicle. This is a typical procedure followed when conducting an official inventory of an impounded vehicle. After removing those items, the officers discovered a plastic bag behind the spare tire. This bag was removed from the vehicle. It was found to contain several clear plastic gloves and a large package wrapped with duct tape. Through a cut in the tape Officer Mahaffey saw a white powdery substance which turned out to be cocaine. He then returned to the Western Union station and arrested defendant. A federal grand jury later indicted defendant for possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii).

The primary issues raised on appeal are 1) whether the impoundment of defendant's vehicle was reasonable under the Fourth Amendment; 2) whether the suppressed evidence would have inevitably been discovered; and 3) whether the second search of defendant's vehicle was proper under a theory of continuing consent.[2]

## II.

■ The Fourth Amendment protects individuals and their property from unreasonable searches and seizures by the government. *United States v. Place*, 462 U.S. 696, 700, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110 (1983). "When a search and seizure is challenged as violative of the Fourth Amendment, the burden is on the government to prove its validity." *United States v. Mendenhall*, 446 U.S. 544, 550, 100 S.Ct. 1870, 1875, 64 L.Ed.2d 497 (1980); *United States v. Carreon*, 872 F.2d 1436, 1441 (10th Cir.1989).

■ Defendant contends that the impoundment of his automobile was an unlawful seizure, and therefore any evidence found during a subsequent search of the

seized vehicle should be suppressed as "fruit of a poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963). Following an evidentiary hearing on defendant's motion to suppress, the district court held that Officer Mahaffey's impoundment of defendant's vehicle was not authorized by law and therefore violated the Fourth Amendment. As a result, the district court granted defendant's motion to suppress. We must affirm this ruling unless we find it to be clearly erroneous. *United States v. Rinke*, 778 F.2d 581, 589 (10th Cir.1985) ("[A] district court's ruling on a motion to suppress will be affirmed unless shown to be clearly erroneous.").

■ Wyoming law provides that a police officer may move an illegally stopped or abandoned vehicle from a public roadway to a place of safety.[3] Under Wyoming law, police officers may only remove an illegally stopped vehicle if it obstructs the normal movement of traffic, Wyo.Stat.Ann. § 31–5–508(b), or under the following circumstances:

(i) Report has been made that the vehicle has been stolen or taken without the consent of the owner;

(ii) The person in charge of the vehicle is unable to provide for its custody or removal; or

(iii) When the person driving or in control of the vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before a proper judge without unnecessary delay.

Wyo.Stat.Ann. § 31–5–508(c). In addition, the Supreme Court has ruled that police officers may impound a vehicle which threatens public safety. *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000 (1976) (plurality opinion).

---

2. Because our ruling is based on other grounds, several other potentially important issues, such as whether the initial traffic stop was pretextual and whether defendant's consent to the first search was freely and voluntarily given, are not addressed in this opinion.

3. The facts of the case show that defendant's vehicle was not abandoned but was rather left unattended. This, by itself, is not a violation of Wyoming law. *See* Wyo.Stat.Ann. §§ 31–13–104, 31–5–509.

Therefore, the government bears the burden of showing that its seizure of defendant's vehicle satisfies one of these standards. The district court held that the government failed to carry this burden. Specifically, the district court found that defendant's vehicle did not obstruct the normal flow of traffic in violation of § 31–5–508(b). This finding is supported by the undisputed fact that the police officers at the scene did not request defendant to move his car while the officers waited forty-five minutes for the wrecker to arrive.

The district court also found that defendant's situation did not justify removal of the vehicle under Wyoming statute § 31–5–508(c) for the following reasons: 1) there was no report that the vehicle had been stolen; 2) the person in charge of the vehicle was able to provide for the custody of the vehicle but was never given the opportunity to do so by Officer Mahaffey; and 3) defendant was not under arrest at the time Officer Mahaffey elected to have the vehicle removed. *Id.*[4]

Such factual findings can only be reversed by this court if we find them to be clearly erroneous. *United States v. Guglielmo*, 834 F.2d 866, 868 (10th Cir.1987); *United States v. Cooper*, 733 F.2d 1360, 1364 (10th Cir.1984). Moreover, the evidence on appeal must be viewed in the light most favorable to the district court findings. *Guglielmo*, 834 F.2d at 868; *United States v. Lopez*, 777 F.2d 543 (10th Cir. 1985). We hold that the district court's factual findings regarding the lack of justification for the impoundment pursuant to sections 31–5–508(b) or 31–5–508(c) are not clearly erroneous.

Although the district court's factual findings are subject to a "clearly erroneous" standard of review, the ultimate determination of the reasonableness of Officer Mahaffey's seizure and search is a question of law to be reviewed by this court de novo. *United States v. Pena*, 920 F.2d 1509, 1513–14 (10th Cir.1990).

The government argues that Officer Mahaffey's decision to impound defendant's vehicle was reasonable because defendant could not provide for the custody or removal of his vehicle and therefore Officer Mahaffey was authorized to remove the vehicle to a place of public safety under Wyoming statute § 31–5–508(c). Appellant's Reply Brief at 10. Because we hold that the district court's finding that defendant was in fact able to provide for the removal and custody of his vehicle was not clearly erroneous, we conclude that Officer Mahaffey's decision to impound the vehicle was made without proper authority under Wyoming law. Therefore his decision was not reasonable and in conformance with the Fourth Amendment unless justified under *Opperman.*

Although Officer Mahaffey did not conform to Wyoming law when seizing defendant's vehicle, the much closer question in this case is whether reasons of public safety dictated that Officer Mahaffey impound the car as allowed under *Opperman,* 428 U.S. 364, 369, 96 S.Ct. 3092, 3097. Clearly, police officers must have a certain amount of discretion in determining what threatens public safety. Indeed, Officer Mahaffey testified that he elected to have the car impounded because it posed a safety hazard. The district court found, however, that this testimony lacked credibility, and we must rely on that finding unless clearly erroneous. *United States v. Axselle,* 604 F.2d 1330 (10th Cir.1979) (credibility of witnesses, weight to be given evidence, and drawing of inferences are for the trial judge). It appears that if the position of

4. The district court also found that the decision to impound was improper because reasonable alternatives to impoundment existed, such as pulling the vehicle completely off the highway and locking it. This analysis comports with *United States v. Pappas,* 735 F.2d 1232 (10th Cir.1984) (no need to impound where alternatives to impoundment sufficiently protect the officers from any potential claims against them). *United States v. Kornegay,* 885 F.2d 713 (10th Cir.1989) (impoundment of defendant's vehicle proper even though alternatives to impoundment existed), could conceivably lead to a different outcome. However, both *Pappas* and *Kornegay* are to some extent inapposite because in each of those cases the defendant was lawfully arrested and removed from the location of his vehicle with no freedom to provide for its care and custody. Such is not the case here.

the vehicle would have been a true threat to public safety, the officers would have moved the vehicle to the side of the road while waiting for the tow truck to arrive. Furthermore, the potential existed that the real reason the officers wished to remove the vehicle to a more secure location was to conduct a more intensive investigatory search. *See infra* note 7. We thus cannot hold that the district court's finding was clearly erroneous.[5]

We conclude that the government failed to carry its burden of showing that the impoundment of defendant's vehicle was authorized by Wyoming law or *Opperman.* Therefore, we affirm the district court's holding that the seizure of defendant's vehicle was unreasonable.

### III.

▇▇▇▇ The government argues that even if the second search of the vehicle was unlawful, the evidence found during the second search should nevertheless be admissible because it would have been inevitably discovered during a routine inventory of the vehicle's contents. *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377

(1984), established that the inevitability of discovering evidence by lawful means removes the taint from evidence first discovered through unlawful means. An inventory search is a well-defined exception to the warrant requirement of the Fourth Amendment. *Colorado v. Bertine,* 479 U.S. 367, 371, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987); *Opperman,* 428 U.S. at 372, 96 S.Ct. at 3098. Consequently, if evidence seized unlawfully would have been inevitably discovered in a subsequent inventory search, such evidence would be admissible.

In this case, however, no inventory of the contents of defendant's vehicle could have been conducted but for the unlawful impoundment of the vehicle. Thus, the government cannot claim that the evidence eventually seized during the second search would have been inevitably discovered.[6] Therefore, the inevitable discovery doctrine cannot operate to remove the taint of the Fourth Amendment violation in this case. We decline to unnecessarily address other issues relevant to considering the inevitable discovery doctrine's application to this case.[7]

---

**5.** In addition, as noted by the district court, "[i]f in fact a need existed for [defendant] to move his vehicle, he was plainly capable of making those arrangements with a private towing 'service of his choice to a destination of his choice and he was present and clearly capable of making the arrangements for the safekeeping of his belongings.'" *Ibarra,* 725 F.Supp. at 1202 (quoting *State v. Travitz,* 140 Ga.App. 351, 352, 231 S.E.2d 127, 128 (1976)).

**6.** In addition, the district court found that the inventory search would not have been inevitably conducted following the impoundment of the vehicle because Officer Mahaffey did not always conduct inventories of vehicles he impounded despite the fact that the highway patrol had a policy of routinely inventorying the contents of impounded vehicles. Both sides presented evidence as to whether it should be the routine practice of the officer or the policy of the agency which controls in an inevitable discovery case. Although the issue is certainly an interesting one, we need not resolve it here.

**7.** For example, in addition to the unlawful seizure preventing the police from claiming lawful custody over the vehicle, there is also some question concerning whether the police ever

had proper custody of the vehicle after it had been towed or whether the towing simply gave rise to a bailee-bailor relationship between the private towing service and defendant. *See* Record, vol. 5, at 131–35. It is likewise unclear whether an owner of a vehicle must surrender possession of his or her vehicle to the police simply because the owner's driver's license has expired. Moreover, there is some evidence that the inventory search was itself tainted by an improper investigatory motive. *Ibarra,* 731 F.Supp. at 1040 ("At the hearing, it was revealed under questioning by the court that the officers had the vehicle towed so that they could search it in a more secure location."); Record, vol. 4, at 114 (report of Leazenby admitted into evidence; that report suggests that Leazenby wanted to have the vehicle impounded so that he could further investigate an object he had seen in the trunk of defendant's vehicle during the initial search). *See also Florida v. Wells,* 495 U.S. 1, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990) (inventory searches cannot be a "purposeful and general means of discovering evidence of crime") (quoting *Colorado v. Bertine,* 479 U.S. 367, 376, 107 S.Ct. 738, 743, 93 L.Ed.2d 739 (1987)); *United States v. Place,* 462 U.S. 696, 706, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983) (if purpose of seizure is an investigatory search, seizure must be based on probable cause).

## IV.

█ Although we hold today that defendant's vehicle was unlawfully seized and subsequently searched, it is well-established that certain exceptions to the exclusionary rule may render evidence discovered pursuant to an unlawful seizure nevertheless admissible. The inevitability doctrine just discussed is one such exception. The government's claim of continuing consent could conceivably be another. The government asserts that defendant's consent to search his vehicle carried over to the second search of his car conducted at the lot to which the vehicle was towed. We hold that because an illegal seizure occurred following the initial consent, that consent does not "continue" to justify the second search.[8]

This is not to say that the government's theory of continuing consent is not without additional potential failings. For instance, defendant may have revoked his consent when he closed and locked the trunk of his vehicle following the first search;[9] defendant may not have freely and voluntarily consented to the first search; and the scope of the consent may have been exceeded. However, our previous holding makes it unnecessary to rule on these issues.

## CONCLUSION

Based on the district court's finding of fact, we hold that Officer Mahaffey's decision to impound defendant's vehicle was an unreasonable seizure in violation of the Fourth Amendment. Therefore, the district court's ruling to suppress the evidence

subsequently discovered was not clearly erroneous.

The mandate shall issue forthwith.

BALDOCK, Circuit Judge, concurring.

Instead of focusing on a technical reading of the Wyoming abandoned vehicles statute, *see* Wyo.Stat.Ann. § 31–5–508 (Michie 1987) and the alternatives available to the officers, the court should focus on the reasonableness of the decision to impound the vehicle; the Fourth Amendment requires no more. *See South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000 (1976) ("The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.").

I cannot agree that it was unreasonable for the officers to impound Defendant's vehicle. Neither occupant possessed a valid driver's license, both were from a distant state, the ownership of the vehicle was questionable at best, and, perhaps most importantly, the vehicle was parked on a dangerous curve adjacent a two-lane highway. *See* IV R. 23, 107 (officer testified that the curve was "tight" and that numerous accidents had occurred there in the previous year). Given the circumstances, it was not unreasonable for the officers to call a wrecker and thus insure the vehicle's removal rather than rely on Defendant to do the same, nor was it unreasonable for the officers to wait forty-five minutes without requesting Defendant to move the vehicle, for it is by definition unreasonable to

---

**8.** Other facts could lead to a different result. If, for example, Officer Mahaffey would have obtained defendant's consent to conduct a second search of defendant's vehicle following the unlawful seizure, this consent would have broken the chain of illegality stemming from the tainted seizure of the vehicle. *United States v. Maez*, 872 F.2d 1444, 1454 (10th Cir.1989). However, the government claims that defendant's continuing consent to the second search flows from his initial consent to the first search which took place before the unlawful seizure. Thus, the evidence seized in the second search remains tainted by the unlawful seizure of the vehicle and is inadmissible. *See also United States v. Recalde*, 761 F.2d 1448 (10th Cir.1985) (where a

Fourth Amendment violation occurred between a first search of defendant's vehicle conducted on the highway and second search after the car had been removed to the police station, the evidence discovered during the second search properly ruled inadmissible).

**9.** The district court found that the act of closing and locking the trunk constituted an express revocation of defendant's consent to search his vehicle. *Ibarra*, 731 F.Supp. at 1039. *See also Cooper v. State*, 480 So.2d 8, 11 (Ala.Ct.Crim. App.1985) (the act of locking a trunk effectively revokes defendant's consent to any future searches of defendant's vehicle).

**1412**

expect officers diligently to pursue all alternatives, particularly when a potential safety hazard exists.[1]  *See Colorado v. Bertine*, 479 U.S. 367, 374, 107 S.Ct. 738, 742, 93 L.Ed.2d 739 (1987) (" 'The reasonableness of any particular governmental activity [impoundment] does not necessarily or invariably turn on the existence of alternative 'less intrusive' means.' ") (quoting *Illinois v. Lafayette*, 462 U.S. 640, 647, 103 S.Ct. 2605, 2610, 77 L.Ed.2d 65 (1983)). *See also Cady v. Dombrowski*, 413 U.S. 433, 447, 93 S.Ct. 2523, 2531, 37 L.Ed.2d 706 (1973) ("The fact that the protection of the public might, in the abstract, have been accomplished by 'less intrusive' means does not, by itself, render the search 'unreasonable.' ").  Moreover, Defendant could not legally have moved the vehicle anyway because he did not have a valid driver's license.

Notwithstanding, I concur because the district court's fact findings concerning the officers' motivation are not clearly erroneous.  The inventory search exception does not apply if the inventory procedure is a mere "pretext concealing an investigatory police motive."  *Opperman*, 428 U.S. at 376, 96 S.Ct. at 3100.  *See also Bertine*, 479 U.S. at 376, 107 S.Ct. at 743.  The district court's conclusion that the officers' decision to impound the vehicle was tainted by an investigatory motive is supported by the record.  *See* IV R. at 90, 105 (officer's testimony that he suspected drugs and that he assumed he was operating under continuing consent).  Thus, I concur based on this narrower ground.

---

**1.** On this point, the court cites *United States v. Pappas*, 735 F.2d 1232 (10th Cir.1984).  Op. at p. 1409, n. 4.  *Pappas*, however, did not involve public safety; the vehicle in that case was legally parked in a private lot.  735 F.2d at 1234.