STEPHEN H. ANDERSON, Circuit Judge.
Defendant-Appellant David M. Lugo was found guilty by a jury and convicted on one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a) and (b), and on one count of use of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). On appeal, Lugo challenges the district court’s denial of his motion to suppress evidence of a firearm, ammunition and cocaine found in his truck. In denying Lugo’s motion to suppress, the district court found that the search of Lugo’s truck was justified as a search incident to arrest and under the “community caretaking function” exception to the warrant requirement. For the reasons stated below, we disagree and reverse.[1]
*633 I. BACKGROUND
In January 1991, David Lugo was involved in a two-car collision on a snow-packed Wyoming highway near Rock Springs, Wyoming. Lugo was driving a truck which bore Arizona license plates; the other vehicle was a rental car driven by FBI Agent David Boyer. Both parties stopped and exchanged insurance and registration information and, at Boyer’s request, Mr. Lugo agreed to follow Boyer to a service station in Rock Springs in order to report the accident to the Wyoming Highway Patrol.
Thirty to forty-five minutes later, Wyoming Highway Patrolman Carl McDonald arrived at the service station and interviewed Agent Boyer in his patrol car while Lugo waited inside the service station. McDonald then interviewed Lugo and, upon learning that his Arizona driver’s license had been suspended for failure to show proof of insurance, McDonald advised Lugo that he would be cited with driving under suspension and improper lane usage. Because Lugo was unable to post the required $340 cash bond, McDonald advised him he would be taken into custody until his court appearance. At this point, Lugo was no longer free to leave and, according to McDonald’s testimony at the suppression hearing, was “probably” under arrest.
After taking Lugo into custody, McDonald requested that a second officer be sent to the scene to assist him. He also requested a wrecker pursuant to standard Wyoming Highway Patrol policy which requires that a vehicle be impounded whenever a driver is separated from the vehicle and no other licensed driver is available to take custody of the vehicle. Hoping to save towing fees, Lugo arranged with the service station employees and McDonald to have his truck left at the service station until he returned for it.
Lugo drove his truck to the side of the service station, followed by McDonald and Patrolman Edward Sabourin, who by then had arrived to assist. After parking his truck, Lugo retrieved a gas can from the truck bed and placed it in the passenger compartment of his truck. Lugo repeatedly attempted to lock the door of the truck, but McDonald told him not to do so because the officers “would inventory the contents of the vehicle.” In response to McDonald’s questioning, Lugo said that he had no luggage or valuables in the truck. McDonald then asked him if he had any firearms, and Lugo volunteered that there was a gun inside the truck behind the driver’s seat. When Lugo attempted to reach into the vehicle to retrieve the weapon, the officers told him to leave the weapon alone, stating that they would recover it during the inventory. At the suppression hearing, McDonald explained why there was no need to remove the gun at the time he and Sabourin learned of its existence: “I was in control of Mr. Lugo. The gun wasn’t an immediate threat to me. As long as we kept him away from the truck, there were two of.us there, there wasn’t any urgent need to secure the weapon.” R.Vol. II at 80.
Lugo was then handcuffed. McDonald gave Sabourin a “highway patrol inventory sheet” and asked Sabourin to inventory the contents of the truck while McDonald transported Lugo to the Green River Jail. Immediately thereafter McDonald placed Lugo in the back seat of McDonald’s patrol car and drove away. Sabourin then commenced his inventory.
During his inventory search, Sabourin first retrieved the gun from the cab organizer behind the seat. He also found ammunition for the gun in the pocket next to the gun and on the floorboard. He recorded these items on the inventory sheet.
After finding the gun and ammunition, Sabourin opened the passenger door and stepped out of the truck. As he was exiting the truck, he “noticed that the door panel had been ajar, pulled away from the door, and there was a crease on the bottom rear corner of the door panel.” Sabourin described the door panel as being “about a half an inch open.” He also noticed a vent or opening, approximately 3x5 inches in size, in the lower part of the door panel. The opening corresponded with where a speaker would be, but upon closer investigation he determined there was no speaker. *634 The vent or opening had a cover over it, and there were holes in the cover. Sabou-rin decided to investigate further by bending down the edge of the cover over the speaker opening in the door panel and looking inside with his flashlight. He observed a “flimsy rubber covering inside of the vent ... that had been bent up by a brown paper bag inside it.” R.Vol. II at 99. Sa-bourin then bent back the door panel along the existing crease, at the point where the door panel was not attached to the door, reached inside the door panel, and removed the paper bag. He opened the bag and found two white bricks, later determined to be cocaine.
Although Sabourin explained that an inventory search of stereo speakers was common procedure for the Wyoming Highway Patrol, he testified that removing a speaker cover to look inside a door panel would not be part of a routine inventory search. Later during his testimony at the suppression hearing, Sabourin testified that he was conducting a search incident to arrest when he looked and reached inside the door panel.
Upon receiving a message from Sabourin regarding the results of his search, McDonald directed Sabourin to have Lugo’s truck impounded at the State garage. McDonald then advised Lugo of his Miranda rights and told him that Sabourin had found cocaine in his truck. Lugo stated that he was transporting two baggies and that these baggies were on the floor of the truck between the bucket seats. Based on Lugo’s statement, McDonald instructed Sa-bourin to search between the bucket seats of the truck for two baggies containing two “balls” of cocaine. Sabourin returned to the truck and found two baggies.
Lugo was charged with one count of possession of cocaine with intent to distribute, and one count of possession of a firearm in relation to a drug trafficking crime. He filed a motion to suppress the gun, ammunition and cocaine seized from his truck.
After hearing the testimony described above, the district court denied Lugo’s motion to suppress, finding that the search was valid (1) as being incident to Lugo’s arrest under New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); and (2) “for the purpose of safeguarding the general public from a weapon which was in the vehicle” under the “community caretaking function” described in Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). R.Vol. I, doc. 31. The district court declined to resolve the case on the basis of the government’s third argument, that the search was a valid inventory search.
II. DISCUSSION
Our analysis of the district court’s factual findings on the motion to suppress is subject to the clearly erroneous standard of review. United States v. Ibarra, 955 F.2d 1405, 1408 (10th Cir.1992). The reasonableness of the search and seizure, however, is a question of law which we review de novo. Id. at 1409.
A. Search Incident to Arrest
Lugo first challenges the district court’s finding that the search of his truck and the resulting seizure of the firearm and cocaine was a valid search incident to his arrest. Such a search is controlled by New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), in which the Court held that “when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile” as well as “any containers found within the passenger compartment.” Id. at 460, 101 S.Ct. at 2864 (emphasis added). The rationale underlying the Belton rule is that “articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, if not inevitably, within ‘the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m].’ ” Id. at 460, 101 S.Ct. at 2864 (quoting Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969)). It follows, therefore, that a warrantless search incident to arrest is not valid if it is “remote in time or place from the arrest,” *635 Chimel, 395 U.S. at 764, 89 S.Ct. at 2040 (quoting Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964), such that “no exigency exists.” United States v. Chadwick, 433 U.S. 1, 15, 97 S.Ct. 2476, 2485, 53 L.Ed.2d 538 (1977).
In this case, when the search of Lugo’s truck began, Lugo was no longer at the scene. He was handcuffed and sitting in the back seat of a patrol car proceeding toward Green River. Once Lugo had been taken from the scene, there was obviously no threat that he might reach in his vehicle and grab a weapon or destroy evidence. Thus, the rationale for a search incident to arrest had evaporated. Sabourin’s inventory was not contemporaneous because it was remote in time and in place as regards Lugo and his truck being in entirely different locations, and no exigency existed. As the Court in Chadwick explained:
Once law enforcement officers have reduced ... personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.
Chadwick, 433 U.S. at 15, 97 S.Ct. at 2485.[2] Even during the period after Lugo admitted to having a weapon, but prior to his removal from the scene, the officers involved expressed no concern over the possibility of Lugo getting that or any other weapon from his truck. As McDonald testified at the suppression hearing, “[t]he gun wasn’t an immediate threat to me. As long as we kept [Lugo] away from the truck, there were two of us there, there wasn’t any urgent need to secure the weapon.” R.Vol. II at 80 (emphasis added).
Accordingly, we hold that Belton is inapplicable to the facts of this case, and that the warrantless search of Lugo’s truck was not justifiable as a search incident to arrest. Due to this holding, it is unnecessary for us to address other arguments of the parties on this issue.
B. The .“Community Caretaking” Function
The district court also found that the search of Lugo’s truck was valid under the “community caretaking” function articulated in Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). In Cady, the court held that “[w]here ... the trunk of an [impounded] automobile, which the. officer reasonably believed to contain a gun, was vulnerable to intrusion by vandals, ... the search was not ‘unreasonable’ within the meaning of the Fourth and Fourteenth Amendments.” Id. at 448, 93 S.Ct. at 2531. In so holding, the Court described the “community caretaking functions” routinely undertaken by local police officers:
Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.
Id. at 441, 93 S.Ct. at 2528 (emphasis added). Noninvestigatory searches of automobiles pursuant to this function, according to the Court, do not offend Fourth Amendment principles so long as such activities are warranted “in terms of state law or sound police procedure,” and are justified by “concern for the safety of the general public who might be endangered if an intruder removed” a weapon which police reasonably believed was present and located in a part of the vehicle vulnerable to vandals. Id. at 447-48, 93 S.Ct. at 2531. If these criteria are met, evidence which *636 comes to light during a warrantless search of a vehicle is ordinarily admissible at trial.
We agree with the government’s contention that removal of the gun and ammunition from Lugo’s truck was a community caretaking task necessary “to protect the public from the possibility that a revolver would fall into untrained or perhaps malicious hands.” Id. at 443, 93 S.Ct. at 2529. The issue, however, is whether or not Sabourin’s actions in bending over the corner of the vent in the door panel and looking inside, then reaching inside the cavity between the door panel and door to retrieve a paper sack, can fairly be described as a community caretaking function within the meaning of Cady. We think not.
The only weapon discussed in the record is the pistol identified by Lugo himself. Sabourin had recovered and secured that pistol, as well as its clip and ammunition, before he looked further. There is no testimony in the record, and no finding by the district court, that Sabourin suspected the presence of any other weapon, or that when he bent down the covering over the vent he was looking for or suspected another gun, or that he was attempting to protect the public from vandals obtaining a weapon from some part of Lugo’s truck. To the contrary, Sabourin variously described his activities as an inventory or a search incident to arrest. Public danger is not mentioned. Furthermore, there is no testimony, and no finding by the district court, that the interior door panel of a truck, in these circumstances, was a likely place for a suspected weapon or a place vulnerable to vandals in that area, as was the automobile trunk in Cady, for instance.
The government relies on United States v. Johnson, 734 F.2d 503 (10th Cir.1984), in which this court held that the search of the passenger compartment of a vehicle, justified by the presence of a revolver in plain view on the passenger seat, permissibly extended to the trunk of the vehicle upon discovery of non-matching bullets in the passenger compartment. In Johnson, we reasoned that “the presence of non-matching bullets in the passenger compartment would justify a suspicion that matching bullets may be found elsewhere in the automobile or another weapon.” Johnson, 734 F.2d at 505. As indicated above, however, Sabourin found the gun where Lugo told him it would be, and immediately located matching ammunition next to the gun and on the floorboard. He then opened the passenger door and stepped out, at which time he noticed the crease in the door panel. He expressed no suspicion, and testified to no fact which would support a reasonable belief that a further search for weapons was necessary. Thus, we hold that the search into the interior of the door panel was not constitutionally justifiable as a community caretaking function.
C. Inventory Search
Finally, although the district court declined to resolve the case on this issue, the government urges us to find on appeal that the search of Lugo’s truck was permissible as an inventory search.[3] We decline to do so.
An inventory search is a routine administrative procedure designed to effect three distinct purposes: protection of the owner’s property which may be stored in the vehicle; protection of the police against claims of lost, stolen or vandalized property; and protection of the police from potential danger. South Dakota v. Opperman, 428 U.S. 364, 369, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000 (1975). When the police acquire temporary custody of a vehicle, a warrantless inventory search of the vehicle does not offend Fourth Amendment principles so long as the search is made pursuant to “standard police procedures” and for the purpose of “protecting the car and its contents.” Id. at 372, 373, 96 S.Ct. at 3098, 3099. As such, standardized criteria must regulate inventory searches to ensure that they are not used as a “ruse for a general rummaging in order to discover incrimina *637 ting evidence.” Florida v. Wells, 495 U.S. 1, 4, 110 S.Ct. 1682, 1635, 109 L.Ed.2d 1 (1990).
Although the permissible scope of an inventory search has not been well-defined, searching behind the door panel of a vehicle does not qualify as “standard police procedure,” [4] and does not serve the purpose of “protecting the car and its contents” under any normal construction of those terms, at least on the evidence in this record. Opperman, 428 U.S. at 372, 373, 96 S.Ct. at 3098, 3099.
III. CONCLUSION
The most straightforward justification for Sabourin’s search behind the door panel would have been probable cause to believe that the hidden space contained contraband. The totality of the circumstances could support such a view. Lugo was armed, travelling interstate, did not have luggage or other articles normally associated with such a trip, and he displayed a noticeable interest in locking his truck after being told by officers not to. His weapon was within easy reach, along with a fully loaded clip, and there was additional ammunition on the floor of the truck. The loosened door panel, with a creased edge indicating that someone had accessed the cavity inside, could indicate to an experienced or otherwise properly trained officer the likelihood in these circumstances that contraband was hidden in the space. Indeed, when officer Sabourin saw the condition of the door panel, he immediately gave it his full attention. Such a reaction would not likely be motivated by an abstract interest in vehicle disrepair or maintenance. His curiosity must have been piqued by the belief that this was not an innocent situation. See United States v. Arango, 912 F.2d 441, 447 (10th Cir.1990).
However, Sabourin’s testimony did not proceed along those lines. It omitted the crucial fact as to whether or not the condition of the door suggested the presence of contraband, based on his training or experience or both. And, it omitted any link between the other circumstances mentioned above and the loosened panel. In any event, we can only deal with the theories and evidence advanced in the district court. For the reasons stated above, these theories, on the evidence presented, are inadequate to justify the search into and behind the door panel of Lugo’s truck. Furthermore, the government is estopped by its position below from attempting in any subsequent proceeding in this case to construct new theories, including probable cause.
The denial of Lugo’s motion to suppress is REVERSED. For that reason, his conviction is also REVERSED.

. Because we base our decision on other grounds, we do not address the issue, raised by appellant, that his Miranda rights were violated during the initial questioning by Officers McDonald and Sabourin.

. The facts of this case are distinguishable from those in United States v. Cotton, 751 F.2d 1146, 1149 (10th Cir.1985), in which this court held that an officer may seize articles found within the passenger compartment of an automobile "even where the arrestee is outside the vehicle and handcuffed.” We based our decision in that case on the need for an arresting officer to retain some measure of flexibility in determining when he may lawfully search within the vehicle.

. In their briefs, both patties addressed the issue of whether or not Lugo’s truck was lawfully impounded, a prerequisite to a valid inventory search. As we deem the impoundment lawful, we need not address this threshold requirement.

. Trooper Sabourin testified at the suppression hearing that while an inventory search of stereo speakers is "common procedure” for the Wyoming Highway Patrol, removing a speaker cover to look inside a door panel would not be part of a regular inventory search.