**PUBLISH**

**IN THE UNITED STATES COURT OF APPEALS**

**Filed 7/8/96**

**FOR THE TENTH CIRCUIT**

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | )   No. 95-4180 |
| | ) |
| MAXIMINO RIOS, | ) |
| | ) |
| Defendant-Appellant. | ) |

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 94-CR-174)**

---

Ronald J. Yengich (Hakeem Ishola, with him on the brief) of Yengich, Rich & Xaiz, Salt Lake City, Utah, for Defendant-Appellant.

Richard MacDougall, Assistant United States Attorney (Scott M. Matheson, Jr., United States Attorney, and Bruce C. Lubeck, Assistant United States Attorney, on the brief), Salt Lake City, Utah, for Plaintiff-Appellee.

---

Before **PORFILIO, HOLLOWAY** and **MURPHY**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

Defendant-Appellant Maximino Rios appeals from his conviction for possession with

intent to distribute in excess of 500 grams of cocaine, and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(B) and 18 U.S.C. § 2. He entered a conditional plea of guilty after the district court's denial of his motion to suppress and was convicted thereon. On appeal Rios claims error in the suppression ruling.

## I

On October 21, 1994 in Tooele County, Utah, Elizabeth Gurule was driving a maroon 1985 Ford Mustang westbound on Interstate 80. Appellant's Appendix, tab 2, at 22, 26 (Transcript of March 3, 1995 hearing on Motion to Suppress, hereinafter "Tr."). Defendant-Appellant Maximino Rios, Gurule's boyfriend, was a passenger.

Jack Grondahl, an employee of the Utah Department of Transportation (UDOT), was driving eastbound on I-80 that day when he saw a Mustang that appeared to have run off the highway. Tr. at 4-7. He saw a man beating a woman on the ground outside the car. Id. at 7. Grondahl called the UDOT headquarters, explained what he had seen, and said that the driver of the car might be drunk. He provided the license number and location of the Mustang, and said that the car had left heading westbound. The Mustang had an Arizona license plate. Id. at 7-9.

Officer Bates of the Utah Highway Patrol (UHP) received a dispatch that the driver of the Mustang was possibly under the influence of alcohol or was driving recklessly. Tr. at 19. Officer Bates and his supervisor, Sergeant Riches, left their office and headed eastbound on I-80. At mile marker 10, Officer Bates saw a Mustang pass. Sergeant Riches

instructed Officer Bates to turn around through the median. Id. at 21-22. He did and the patrolmen proceeded to catch up with the Mustang. Sergeant Riches testified that before they pulled over the Mustang, dispatch informed him that the Mustang was registered to Israel Martinez of Buckeye, Arizona, and that the vehicle was not stolen. Tr. 53, 83-84. The Mustang was pulled over near mile marker 2. Id. at 22, 25.

After the Mustang stopped, Officer Bates approached the driver's door. He noticed that the driver was a woman, Elizabeth Gurule. Id. at 26. He asked for her driver's license and registration. She handed him her Wyoming driver's license and said that she had a title but not a registration for the vehicle. There was testimony that at about this time, Sergeant Riches had started to pull the passenger, defendant Rios, out of the car. Id. at 27, 84. Officer Bates then requested Gurule to step out of the car, and they went to the rear of the Mustang. Id. at 28. The trial judge found that Gurule and Rios were asked to get out of the car and both complied. Memorandum Decision and Order at 2. At this point, Sergeant Riches "basically took over." Id.

Sergeant Riches had Rios and Gurule come over to the shoulder of the road. Tr. at 60. Riches told Gurule that she had been stopped because of a report of a possibly drunk or reckless driver. Gurule responded that she and Rios had not been drinking; rather, they had gotten into an argument about the way she was driving. Id. at 61. She said Rios hit her. Gurule did not appear to have been drinking. Sergeant Riches could not detect the odor of alcohol on her and could see no indication of any alcohol impairment. Id. at 62.

3

Sergeant Riches then asked Rios for identification. Rios said that he didn't have any identification, but he did give his name. Sergeant Riches asked him if he had any identification at all, and Rios presented a Social Security card. Sergeant Riches asked whose car it was, to which Rios responded that he was buying it from Mr. Martinez. Riches asked Rios if he had a registration, and Rios replied that he did not but that he did possess the title. Id. at 62-63.

Rios presented the title to Sergeant Riches. The title was from the State of Arizona and was in the name Israel Martinez of Buckeye, Arizona. App., tab 3, Plaintiff's Ex. 2(A). However, on the back of the title was a "Transfer of Title" section which had been partially filled out. The name of the seller was listed as Israel Martinez, and the signature of the seller read "Israel Martinez." The signature was notarized in Maricopa County, AZ, on September 17, 1994.[1] However, no date of sale or odometer reading was indicated, nor was there a buyer's name or signature on the title. Id.

Rios indicated that he was living in Rock Springs (Wyoming). He told Sergeant Riches that he was going to give the vehicle back because he didn't realize how bad it was going to be in the snow. Tr. at 64-65. Sergeant Riches informed Rios that the "party that you buy the car from would basically be a lienholder and you are the owner of the car and responsible to have it in your name." Id. at 65-66. Sergeant Riches concluded that the

---

[1]Although it is not entirely clear from the title that the month of the transfer was September, the district judge concluded that September 17, 1994 was the date of transfer. Rios does not challenge this factual finding.

4

Mustang was improperly registered and determined that he would impound it. Id. at 68-69.

Rios was placed under arrest for assaulting Gurule. Tr. at 70. Sergeant Riches then had dispatch summon a wrecker to impound the Mustang. Proceeding according to UHP policy, Sergeant Riches inventoried the Mustang. During that inventory he discovered a car wash mitt on the seat cushion. Id. at 80. He picked it up and felt a brick-like object inside. Id. He looked inside and observed a package that was in a plastic baggy type container. Within that container there was more plastic and tape with a white powdery residue inside. One end was cut or broken open and a white powder substance was exposed. Id. at 81.

Rios, along with Gurule, was indicted on one count of possession with intent to distribute in excess of 500 grams of cocaine and aiding and abetting in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2. He filed a motion to suppress the cocaine, arguing that the impoundment of the Mustang was unlawful and hence the cocaine seized in the inventory search was fruit of the poisonous tree. A hearing was held on March 3, 1995. On June 21, 1995, the district judge issued a Memorandum Decision and Order denying the motion to suppress. App., tab 4. On August 21, 1995, Rios entered a conditional guilty plea to one count of possession of a controlled substance with intent to distribute (21 U.S.C. § 841(a)(1)).[2] He was sentenced to 46 months' imprisonment, 4 years' supervised release, a $50 special assessment and fined $1,000. He appeals from his conviction on his conditional guilty plea, claiming error in the denial of his motion to suppress.

---

[2]On the government's motion the charges against Gurule were dismissed.

## II

On appeal Rios challenges the seizure of the cocaine on the ground that the impoundment of the Mustang was unlawful under the Fourth Amendment and therefore the cocaine seized during the inventory search should be suppressed as fruit of the poisonous tree. See Wong Sun v. United States, 371 U.S. 471, 485 (1963).

In considering Fourth Amendment claims, we review de novo the ultimate question of law of Fourth Amendment reasonableness, but review findings of historical fact of the trial court only for clear error. United States v. Fernandez, 18 F.3d 874, 876 (10th Cir. 1994). Cf. Ornelas v. United States, 64 U.S.L.W. 4373, 4375-76 (U.S. May 28, 1996) (determinations of reasonable suspicion and probable cause should be reviewed de novo; review of historical factfindings is only for clear error.).

The district judge found that police dispatch informed Officer Bates and Sergeant Riches that the Mustang was registered to Israel Martinez of Buckeye, Arizona. Dispatch also informed the officers that the registration appeared valid and that the Mustang had not been reported as stolen. Memorandum Decision and Order at 2. The district judge also found as follows:

> The certificate of title contained the signature of Israel Martinez, dated September 17, 1994, but no name of a buyer was indicated on the title document, and Rios' signature was not on the title document. Officer Riches attempted to contact Israel Martinez, the previous owner of the Mustang, in order to check the veracity of Rios' explanation, but was unable to reach Martinez.
>
> Officer Riches then impounded the Mustang for "improper

6

registration," on the grounds that although Rios claimed to be the owner of the Mustang, there was no valid registration in his name. . . .

. . . .

Officer Riches testified that he was familiar with Utah law concerning registration, and with UHP [Utah Highway Patrol] procedure and policy. Neither officer indicated a familiarity with the registration requirements of either Arizona or Wyoming. Officer Riches testified that he knew that an out-of-state vehicle owned by a nonresident need not be registered in Utah. UHP's policy does not expressly direct the impoundment of all improperly registered vehicles, but Riches testified that he impounds for improper registration 99% of the time. UHP's policy says nothing specifically about impoundment of out-of-state vehicles.

Id. at 3-4. Rios does not challenge the district judge's factual findings, quarreling only with his legal conclusions. Appellant's Opening Brief at 8 n.3. Rios asserts that on the facts before us, the impoundment was unlawful. He contends that this appeal is controlled by United States v. Ibarra, 955 F.2d 1405 (10th Cir. 1992). We agree. In Ibarra, the defendant was stopped on suspicion of drunk driving. The officer determined that the defendant's driver's license had expired, as was the license of the passenger. Because there was no licensed driver to operate the officer called a tow truck and informed the defendant that his vehicle would be released when he could produce a licensed driver to operate the vehicle. After dropping the defendant off at a Western Union station, the officers went to the towing lot and conducted an inventory search of the impounded car. They discovered cocaine in a bag behind the spare tire.

The defendant's motion to suppress was granted by the district court, and we affirmed. In so doing, we addressed whether the impoundment of the defendant's vehicle was

7

reasonable under the Fourth Amendment. In making this determination, we focused on whether the impoundment was lawful under Wyoming law.[3] We upheld the district court's conclusion that the government failed to show that the impoundment of the vehicle satisfied Wyoming law or the public safety exception of South Dakota v. Opperman, 428 U.S. 364, 369 (1976). We concluded that the decision to impound "was made without proper authority under Wyoming law. Therefore [the] decision was not reasonable and in conformance with the Fourth Amendment unless justified under Opperman." Id. We concluded that it was not justified under Opperman, and therefore affirmed the suppression of the cocaine.

Under Ibarra, then, we must first determine whether the impoundment of the Mustang comported with Utah law. In State v. Hygh, 711 P.2d 264 (Utah 1985), the Utah Supreme Court held that the state had not met its burden of establishing the necessity of the seizure of an automobile and thus its impoundment was unlawful. Id. at 269. The court's opinion stated in part:

> In order to support a finding that a valid inventory search has taken place, the court must first determine whether there was reasonable and proper justification for the impoundment of the vehicle. This justification, and thus lawful impoundment, can be had either through explicit statutory authorization or by the circumstances surrounding the initial stop.

Id. at 268 (emphasis added). The court noted that the Utah statutes "give a police department authority to impound vehicles in several situations. Vehicles may lawfully be impounded . . .

---

[3]Judge Baldock, in a concurring opinion, said that instead of focusing on the requirements of state law, the court should focus on the overall reasonableness of the decision to impound the vehicle. Ibarra, 955 F.2d 1405, 1411-12 (Baldock, J., concurring).

when the vehicle is improperly registered, U.C.A., 1953, § 41-1-115 [now § 41-1a-1101]."

Id.  See also State v. Rice, 717 P.2d 695, 696 (Utah 1986) (per curiam) (recognizing that § 41-1-115, now § 41-1a-1101, is a statutory authorization for the impoundment of a vehicle).

We believe that here there was an explicit statutory basis under the Utah Code for the impoundment of the Mustang.

Utah Code Ann. § 41-1a-201 provides:

> Unless exempted, a person may not operate and an owner may not give another person permission to operate a motor vehicle, combination of vehicles, trailer, semitrailer, vintage vehicle, off-highway vehicle, or vessel in this state unless it has been registered in accordance with this chapter, Title 41, Chapter 22, Off-Highway Vehicles, or Title 73, Chapter 18, State Boating Act.

(Emphasis added.)  Utah Code Ann. § 41-1a-202(2) sets forth the exemptions to § 201:

> Registration under this chapter is not required for any:
>
> (a)  vehicle registered in another state and owned by a nonresident of the state . . . .

(Emphasis added.)

The district judge concluded that here the Mustang was improperly registered:

> In the instant case, the second condition is satisfied.  The form of identification which Rios provided to the officers indicated that he was a nonresident of Utah, and Rios was in possession of a negotiated title to the Mustang.  In addition, the absence of a report that the vehicle was stolen reinforced Rios' claim to ownership of the Mustang.  However, the first condition of the exemption, concerning registration in another state, is not satisfied.  Reference in the Utah law to registration in another state clearly must be read to contemplate valid registration in another state.  When the previous owner of the Mustang transferred title to the car to Rios, the previous

9

owner's registration in his name became invalid. The report of the Arizona authorities that the vehicle was properly registered to Israel Martinez does not constitute evidence to the contrary. Since Rios had not yet obtained a new certificate of title or applied for a new registration, the Arizona authorities were under the mistaken impression that Israel Martinez was the owner of the Mustang, and the registration as to him was valid.

In light of these facts, the officers correctly understood that the Mustang was not properly registered in another state, and that the exemption in the Utah registration statute as to out-of-state vehicles did not apply. As a result, the Mustang was required to comply with the Utah vehicle registration rules, including those applicable to vehicles as to which ownership was recently transferred. Operation of the Mustang on the highway after transfer of ownership but prior to obtaining proper registration was a violation of those rules. . . .

Memorandum Opinion and Order at 6-7 (emphasis in original).

The district court then concluded that impoundment was authorized under Utah Code Ann. § 41-1a-1101(1), which provides that "any peace officer, without a warrant, may seize and take possession of any vehicle . . . that . . . is being operated with improper registration . . . ." The district judge concluded that the inventory search was lawful and therefore denied the motion to suppress.

On appeal, Rios challenges the inventory search on the ground that the impoundment was unlawful. He does not argue that the inventory search itself violated the Fourth Amendment. The government asserts that to fall within the exemption under § 41-1a-202(2)(a), the out-of-state vehicle must be <u>validly</u> registered in another state. We agree with this common sense reading of the statute. The government then concludes that "when the Arizona owner signed the title, the vehicle ceased to be <u>validly</u> registered in

Arizona." Brief of Plaintiff/Appellee at 10 (emphasis in original). However, neither the government nor the district court referred to any Arizona authority to support this conclusion. We believe that we must determine whether the title transfer by Israel Martinez invalidated his registration under Arizona law. We turn therefore to Arizona motor vehicle registration law.

Ariz. Rev. Stat. Ann. § 28-314(A) provides that "[w]hen the owner of a registered vehicle transfers or assigns his title or interest thereto, the registration shall expire . . . ." (Emphasis added.) See Matter of 1986 Chevrolet Corvette, 905 P.2d 1372, 1373 (Ariz. 1994) ("A.R.S. § 28-314 requires the purchaser of an automobile to present the certificate of title to the [Motor Vehicle Division] within 15 days, so that a new certificate can be issued in his or her name." (Emphasis added.)); cf. Ariz. Op. Atty Gen. No. I82-099 (vehicle must be registered in order for Motor Vehicle Division to issue vehicle title). We believe it is clear that under § 28-314 the registration of the Mustang in the name Israel Martinez expired by operation of law on September 17, 1994, over a month before the stop of Gurule and Rios. Rios offered no evidence that he presented the title to the motor vehicle departments of Arizona (where the car was titled) or Wyoming (where Rios lived).[4]

---

[4]Rios offered no evidence that the Mustang was validly registered under the laws of Wyoming, his state of residence. Under Wyo. Stat. § 31-2-201(a)(ii)(C), for vehicles transferred from owners other than dealers a transferee must apply for registration and license plates within 10 days of the transfer. During that ten-day period, a vehicle may be operated by the transferee but only "when accompanied by a properly executed title for the vehicle transferring interest in the vehicle to the transferee or when accompanied by a notarized bill of sale under W.S. § 31-2-104(d) if the transfer is subject to that subsection." Martinez

11

Thus, notwithstanding the information from Arizona authorities that the vehicle was registered to Israel Martinez--information which was clearly stale--the Mustang was not validly registered. Because there was no valid out-of-state registration for the Mustang, the vehicle did not fall within the exemption of Utah Code Ann. § 41-1a-202(2)(a).[5] Therefore, under Utah Code Ann. § 41-1a-201, the Mustang was required to be properly registered according to Utah vehicle registration law. It was not. And because the Mustang was improperly registered under Utah law, Sergeant Riches was authorized by Utah Code Ann. § 41-1a-1101(1)(a) to "seize and take possession of" it. See State v. Hygh, 711 P.2d at 268. Under Ibarra, because the Mustang was lawfully impounded under state law (in this case, pursuant to an explicit statutory authorization), the impoundment was reasonable under the Fourth Amendment.

On appeal, Rios challenges the seizure of the cocaine in the inventory search only on the ground that the impoundment was unlawful and therefore that the inventory search was tainted. He does not, however, challenge the legality of the inventory search independent of the legality of the impoundment.[6] Because we conclude that the impoundment did not violate the Fourth Amendment, Rios's appeal lacks merit. Therefore, the cocaine was properly

transferred title on September 17, 1994; thus, Rios was required to register the vehicle in Wyoming by September 27, 1994. He presented no proof to the officers, nor evidence at the suppression hearing, that he did so.

[5]None of the other exemptions of § 41-1a-202(2) is applicable.

[6]Moreover, we have independently reviewed the record and see no constitutional infirmity in the inventory search.

12

seized and the judgment and sentence are

**AFFIRMED**.