**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 17, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JEFFREY WAYNE POWELL,

Defendant - Appellant.

No. 19-8083
(D.C. No. 2:19-CR-00069-NDF-1)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **SEYMOUR**, and **KELLY**, Circuit Judges.
_____

Defendant-Appellant Jeffrey Wayne Powell entered a conditional plea to

conspiracy to distribute 500 grams or more of a mixture or substance containing a

detectable amount of methamphetamine, 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)A),

and possession with intent to distribute 50 grams or more of a mixture or substance

containing a detectable amount of methamphetamine, 21 U.S.C. §§ 841(a)(1) and

(b)(1)(B), reserving the right to appeal the denial of his motion to suppress.  He was

sentenced to 120 months on each count to run concurrently, and five years of

supervised release.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## Background

On the morning of January 16, 2019, deputies Rich Lang and Eric Coxbill of the Campbell County Sheriff's Office were conducting surveillance of Mr. Powell's residence for evidence of drug distribution. Aplt. App. 49–51. The officers approached the residence at 2:50 a.m. Aplt. App. 51. They believed that Mr. Powell was awake because several vehicles pulled up to the residence and left. Aplt. App. 103. The officers contacted a third officer to join them, Deputy Tyler Cox, who was wearing a body camera. Aplt. App. 51. They had not applied for nor received a search warrant.

### A. Description of Property

Mr. Powell's residence is located on a lot that is the business location for Anytime Storage, a storage facility open 24 hours a day, seven days a week. Aplt. App. 94–95, 191. The district court found it was "unclear . . . whether the business office of Anytime Storage still operates as such, or whether the entirety of the structure was . . . dedicated to residential space." Aplt. App. 49 n.1. The residence contains a sign indicating that it is a residence, but customers may submit rent checks through a mail drop. Aplt. App. 50.

The lot is enclosed by a barbed wire fence with two openings, one on the south (the main entrance to Anytime Storage) and one on the west leading to Mr. Powell's driveway. Aplt. App. 50. The residence/office is a single-wide trailer with an attached garage located on the western portion of the lot. Aplt. App. 49. There are two doors on the east side of the residence/office, and the storage units to the east are

about 20-30 feet away.  Aplt. App. 50.  North of the residence, customers of Anytime Storage store cars, boats, and other large items.  Aplt. App. 50.  The residence is on a concrete pad, which forms a walkway on the eastern portion of the building and a small walkway on the north of the building that connects to the driveway on the west side of the trailer.  Aplt. App. 38.  The west side of the building opens onto a public road via the driveway.  Aplt. App. 49.  The driveway was used by Mr. Powell for personal purposes.  Aplt. App. 57.

### B.  Officers' Actions

The officers entered Anytime Storage through its main entrance, parked on the east side of the residence, and approached the northernmost door on the eastern wall, which they thought was the front door.  Aplt. App. 106–08.  The officers knocked on the door but received no response.  Aplt. App. 109–10.  Deputy Cox traversed the walkway on the north side of the residence to check if anyone was fleeing or flanking the officers.  Aplt. App. 109–10.  Deputy Cox followed the north walkway to the driveway but did not cross the fence line onto the driveway.  Aplt. App. 125, 132.  There were no "No Trespassing" signs.  Aplt. App. 126.

Deputy Cox did not observe anyone, so he walked back to the front door to check on the other officers.  Aplt. App. 126–27.  Once he confirmed they were still waiting, he returned to the northwest corner of the residence, staying on the walkway.  Aplt. App. 127.  From the walkway, he smelled marijuana near the garage.  Aplt. App. 127.  He stepped onto the driveway and smelled around the garage doors, with his face a few inches from the garage.  Aplt. App. 128.  He continued to smell

3

marijuana and heard voices in the residence. He then returned to the front door. Aplt. App. 128.

Deputy Cox told the other officers that he smelled marijuana near the garage and they followed him to search the driveway, where they confirmed the smell of marijuana. Aplt. App. 129. Based on this information, the officers obtained a search warrant to search Mr. Powell's residence and executed it shortly after. Aplt. App. 46. The search resulted in the recovery of over a pound of methamphetamine from inside the residence. Aplt. App. 30.

### C. Motion to Suppress

Mr. Powell moved to suppress the drugs found in his residence. Aplt. App. 11–19. He alleged that the officers conducted an unlawful search in violation of the Fourth Amendment when they searched areas he claimed were curtilage. Aplt. App. 11–19. He argued that the methamphetamine found pursuant to the search warrant was fruit of the poisonous tree. Aplt. App. 18. The district court ruled that the area searched was not curtilage. Aplt. App. 49, 56–58.[1]

### Discussion

We review a district court's ruling on a motion to suppress de novo. United States v. Loera, 923 F.3d 907, 914 (10th Cir. 2019). "When reviewing the district court's denial of a motion to suppress, we view the evidence in the light most

---

[1] Because we find that the area searched was not curtilage, we need not address the district court's finding that the search was conducted as part of a "knock and talk." Aplt. App. 58.

4

favorable to the government and accept the district court's factual findings unless they are clearly erroneous." Id.

The district court did not err in denying Mr. Powell's motion to suppress. The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The government has the burden to prove a search was valid under the Fourth Amendment. United States v. Ibarra, 955 F.2d 1405, 1408 (10th Cir. 1992). "A warrantless search of a defendant's home is unreasonable absent exigent circumstances or consent." United States v. Pikyavit, 527 F.3d 1126, 1130 (10th Cir. 2008). The curtilage is "part of the home [] for Fourth Amendment purposes." Florida v. Jardines, 569 U.S. 1, 6 (2013).

In United States v. Dunn, the Supreme Court established a four-factor test to determine whether an area was curtilage. 480 U.S. 294, 301 (1987). Mr. Powell argues that Dunn is inapplicable because it produces "awkward" results. Aplt. Br. 24. He argues that "[g]aps in the physical structure of the home" that officers exploited to learn what was going on inside the home are intimately tied to the home and that is where the inquiry should end. Aplt. Br. 24–25. But the area actually searched in this case was the north walkway and driveway. Aplt. App. 127–29.

The four factors established in Dunn were: (1) "the proximity of the area claimed to be curtilage to the home;" (2) "whether the area is included within an enclosure surrounding the home;" (3) "the nature of the uses to which the area is

5

put;" and (4) "the steps taken by the resident to protect the area from observation by people passing by."  480 U.S. at 301.

The walkway to the north of the residence was not curtilage.  The parties agree that the north walkway was in close proximity to the residence, Aplee. Br. 14, however, none of the other factors favor a finding of curtilage.  There was no enclosure surrounding the walkway.  Aplt. App. 40.  The nature of the use of the walkway was commercial and it was not protected from observation.  Further, the area to the immediate north of the walkway was part of the publicly accessible storage facility.  Aplt. App. 94–95, 191, 50.  Indeed, satellite images reveal a boat being stored on the walkway itself.  Aplt. App. 38.

Given that Deputy Cox smelled marijuana near the garage while standing on the north walkway, we need not address whether the driveway is curtilage.  The smell of marijuana provided the officers probable cause to secure a search warrant.  Aplt. App. 44, 46.  Because Deputy Cox was able to smell marijuana before transgressing onto the driveway, the officers could have still secured a search warrant based on that information.

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

6